In the Matter of LEON RUBY, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, March 16, 1965.

*John G. Bonomi* (*Richard A. Nachman* of counsel), attorney for petitioner.

*Leon Ruby,* respondent in person.

*Per Curiam.* Respondent was admitted to practice in the First Department on December 16, 1929. Respondent was charged in three specifications with requesting a client awaiting sentence in a criminal case to give him a sum of money to be used to bribe an "advisor" to the sentencing Judge to obtain a suspended sentence for the client, and accepting from the client the sum of $50 in cash in part payment thereof; testifying falsely under oath before a Grand Jury in New York County and making false statements, orally and in writing, to the Committee on Grievances of the Association of the Bar of the City of New York to the effect that he did not request the client to give him a sum of money to be used for said purposes, and denying having conversations with the client on or about April 4, 6 and 9, 1962 on this subject, and that he received the sum of $50 from the client for that purpose, and, instead, asserting that said sum was intended as a voluntary payment of an additional legal fee.

The learned Referee sustained charge 1 except that portion charging that the money was solicited as a bribe to an "advisor" to the sentencing Judge; sustained charges 2 and 3 that respond-

ent falsely testified before the Grand Jury and falsely represented to the Committee on Grievances that he did not have the said conversations with the client on April 4, 6 and 9, 1962, which were recorded and transcribed on petitioner's Exhibits 3A, 3B and 3C in evidence.

In summary, the Referee found that respondent solicited and the client agreed to the payment of the additional sum of $250 for the purpose of increasing the client's chances of receiving a suspended sentence which sum was to be repaid in the event that the sentence was not suspended, and respondent falsely denied under oath before the Grand Jury and the Committee on Grievances that he had the conversations referred to. It is undisputed that respondent had received a fee of $1,000, the agreed sum for all legal services rendered and to be rendered in the representation of the client in respect of a pending indictment against him.

The Minifon recordings in evidence were heard by this court and we conclude, as did the Referee, that the statements attributed to the respondent in the transcripts of the recordings were made by him. The recordings, particularly that of April 9, 1962, confirm the client's version that the sum to be paid was represented to be for payment to an " advisor " to the sentencing Judge.

We find that the record amply sustains the charges. Accordingly, we confirm the Referee's report and disaffirm it only to the extent that it fails to find the money was " to be used " for certain corrupt purposes, the charges meaning no more than there was the pretense or representation made in obtaining the money. The Referee's report makes this clear.

Respondent's conduct, aggravated by his fabricated defense and false assertions before the Grand Jury, the Committee on Grievances and in this disciplinary proceeding, dictates disbarment. (*Matter of Rosenberg,* 276 App. Div. 268; *Matter of Blumstein,* 258 App. Div. 31; *Matter of McGauley,* 252 App. Div. 282.)

This case is quite unlike *Matter of Levy* (22 A D 2d 556) decided simultaneously with this. There the respondent overstepped the bounds in obtaining a fee to which he was entitled. Here, the respondent, a successful and respected lawyer, had received the retainer by referral through a local bar association of which he had been a former president, and resorted to criminal means to exact moneys to which he was not entitled. Moreover, from the beginning, unlike the respondent in the *Levy* matter, this respondent lied with fantastic and involved fabrication to the authorities and to the bar association, and

repeated the fabrications by swearing falsely before the Grand Jury and then the Referee designated by this court. By his conduct he may have avoided a criminal conviction, while the respondent in the *Levy* matter by his candor and contrition subjected himself to a criminal conviction on his plea of guilty.

To top it off this respondent had no discoverable financial motive to explain away his greed, except that his client had earned more money than he had known. The respondent in the *Levy* matter was in a different financial situation and was seeking, albeit by stupid and reprehensible means, to receive that to which he was entitled. In addition his grave health condition was probably a factor in the occasion of the offense, and is certainly a factor, together with other mitigating circumstances, suggesting a lesser sanction of discipline before this court.

Respondent should be disbarred.

McNALLY, J. (dissenting). I dissent, in part. The professional misconduct of respondent herein and in *Matter of Levy* (22 A D 2d 556), decided herewith, is substantially similar and is extremely reprehensible. The infractions of both respondents serve to bring the administration of justice into disrepute. That the motivation in each case differed does not lessen the seriousness of the infractions. Respondent herein has enjoyed an active and unblemished professional record of 35 years, rendering substantial service to the community. In my opinion a suspension for a substantial period of time would protect the public and would be consistent with the holding in *Matter of Levy* (*supra*).

BREITEL, J. P., VALENTE, EAGER and STEUER, JJ., concur in *Per Curiam* opinion; McNALLY, J., dissents in opinion.

Respondent disbarred effective April 16, 1965.